# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 24-0009V

|  |  |
|---|---|
| DIANE JEFFERS, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 3, 2026 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Camille Jordan Webster, U.S. Department of Justice, Washington, DC, for Respondent.*

## **RULING ON ENTITLEMENT**[1]

On January 4, 2024, Diane Jeffers filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following a flu vaccine she received on September 21, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the onset of shoulder pain within 48 hours of her vaccination, and that she has satisfied

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

all of the requirements for a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.      Relevant Procedural History

On October 24, 2024, Respondent filed his Rule 4(c) Report contesting entitlement. ECF No. 16. Petitioner subsequently filed a Motion for Ruling on the Record Regarding Entitlement ("Mot.") on January 31, 2025. ECF No. 20. Respondent filed a response ("Resp.") on March 6, 2025. ECF No. 21.

I proposed that the parties be given the opportunity to argue their positions during an expedited entitlement hearing, which was held on February 20, 2026. ECF No. 23.

## II.      Relevant Facts

*Medical Records:*

Petitioner had a history of rotator cuff surgery on her right shoulder, and carpal tunnel surgery on both hands. *See* Ex. 3 at 859, 868-69. She also suffered from back and knee pain and osteoporosis, but had no history of left shoulder dysfunction. *Id*. at 7-12. Six weeks before her vaccination, Petitioner fell and injured her knee, hip, and lower back. *Id*. at 789.

Petitioner received a flu vaccine in her left deltoid on September 21, 2022. Ex. 1 at 1. Twenty days later, on October 11, 2022, she had a telephone visit with her psychiatrist during which she mentioned several stressors in her life, including knee pain. Ex. 3 at 849-50. She also reported sleeping well – 7-8 hours per night. *Id*. There is no mention of shoulder pain.

Eight days later, on October 19, 2022 (now 28 days after vaccination), Petitioner had a routine follow-up with her primary care provider ("PCP"). Ex. 3 at 858. Several conditions were addressed, but there is no mention of shoulder pain. *Id*. Petitioner saw her psychiatrist again on December 6, 2022. *Id.* at 847. She reported that her sleep had been "fine," and that she was wearing a boot on her ankle. *Id.* There is no mention of shoulder pain.

On December 12, 2022 (now 85 days after vaccination), Petitioner went to urgent care with complaints of left shoulder pain. Ex. 3 at 784. She reported pain "for the last 3 months, since getting her flu shot injection." *Id*. She stated that "after the shot she had a bubbling up of her injection site, that took a month to resolve." *Id*. On exam, she had mild tenderness to palpation and pain with extension and abduction. *Id*. at 785. She was prescribed diclofenac ointment and a Medrol dosepak, and was sent for an x-ray and an MRI. *Id*.

The x-ray showed only mild degenerative changes. Ex. 2 at 766. The MRI (performed January 17, 2023) revealed high-grade, largely full-thickness, rotator cuff tearing, labral tearing, "imaging features of adhesive capsulitis," high-grade long head biceps tearing, probable biceps tenosynovitis, probable bursitis, and "slightly increased red marrow of the proximal humerus." *Id*. at 768.

Petitioner saw an orthopedist on January 26, 2023. Ex. 3 at 872. She reported acute onset left shoulder pain "following her flu shot in September." *Id*. She noted that her pain at the time was "severe," "constant," and "aggravated by and limiting her daily activities involving reaching or lifting." *Id*. The orthopedist's review of the MRI was that there was "degenerative chronic and significant tearing of the supra and infraspinatus tendons." *Id*. at 873-74. He noted "pain and crepitus with passive range of motion that is relatively normal," but active range of motion that was limited. *Id*. at 875. The doctor opined that "the injection may have triggered pain but did not cause the cuff tear, which was certainly preexistent but evidently not symptomatic." *Id*. at 872. Petitioner was given a cortisone injection and referred to physical therapy. *Id*. at 873.

On February 28, 2023, Petitioner saw her psychiatrist and reported that she had been unable to drive to Virginia at the time of her sister's death due to her left shoulder pain. Ex. 3 at 845.  She began OT the same day. Ex. 3 at 998. During her evaluation, Petitioner reported left shoulder pain "which started in September 2022 s/p flu shot." *Id*. Treatment was planned once a week for four weeks. *Id*. at 1000. (Petitioner ultimately completed seven treatments through June 12, 2023. *Id*. at 986).

Petitioner returned to the orthopedist on March 2, 2023. Ex. 3 at 868-69. Although surgery was discussed, Petitioner reported that she was "comfortable with her current condition," and she chose to continue conservative treatment. *Id*. at 868. She returned again on June 6, 2023, with continued pain and received a second cortisone injection. *Id*. at 864-65. Petitioner continued to want to avoid surgery. *Id*. at 865.

Petitioner received additional cortisone injections through 2023 and into 2024. *See* Ex. 3 at 108; Ex. 5 at 116, 158.

*Affidavit Testimony*

Petitioner filed two affidavits (one on February 9, 2024 and one on January 31, 2025 with her motion for a ruling on the record) in support of her claim. She stated that she mentioned to the vaccine administrator that the vaccine had been placed too high, and that she felt immediate pain - "like the needle hit a bone." Ex. 4 at ¶1; Ex. 6 at ¶1. She said that the injection site "bubbled up" to the size of a quarter, which took a month to resolve. *Id*. She also states that she mentioned her shoulder pain during her October 19, 2022 visit with her PCP. Ex. 4 at ¶2; Ex. 6 at ¶3. In the first statement, Petitioner said that the nurse practitioner "replied that it will probably heal over time." Ex. 4 at ¶2. In the

second, she said that the nurse practitioner chose not to look at the "bubbled up" skin and did not take her seriously. Ex. 6 at ¶3.

Petitioner reported in her first affidavit that she went to urgent care in December 2022 when her pain became unbearable. Ex. 4 at ¶4. In her newer affidavit, she said she had begun calling for an appointment during the first week of November and the doctor was booked "through December." Ex. 6 at ¶6. She said she called every week for a cancellation and at some point the schedulers suggested she go to urgent care. *Id.*

Petitioner added that she mentioned her shoulder pain to her psychiatrist "a few times," but not during the first few months after her vaccination because she knew it was outside of his area of expertise. Ex. 6 at ¶10.

Petitioner's daughter filed an affidavit in which she stated that Petitioner called her on the day of the vaccination and told her that she had shoulder pain "immediately after the shot." Ex. 7 at ¶2. She remembered Petitioner telling her that she had spoken to her doctor and been reassured that it would heal. *Id*. at ¶3. She also remembered Petitioner telling her that she had told multiple doctors about her shoulder pain and "none of them thought much of what she was reporting." *Id.* at ¶4.

Petitioner's friend filed an affidavit in which she states that Petitioner called her just after leaving her vaccination appointment. Ex. 8 at ¶1. She remembered Petitioner saying the shot was given too high and that the nurse dismissed her concern. *Id*. She stated that Petitioner had a large bubble on her arm that took a month to go away. *Id*. She stated that Petitioner "was unable to sleep" or use her arm without extreme pain. *Id*.

### III.    Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule

does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of

the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

### IV.    Findings of Fact - Onset

Respondent argues that Petitioner has not established that her pain began within 48 hours of her vaccination. Resp. at 8-9. In support, he highlights three medical appointments Petitioner had between her vaccination and her December 12, 2022 visit to urgent care for her shoulder pain. *Id.* Two were with Petitioner's psychiatrist, a specialist not expected to treat shoulder pain. *See* Ex. 3 at 847, 858. Although Petitioner did mention shoulder pain to her psychiatrist on two later occasions, she did not seek or receive treatment from him and discussed her pain in the global context of her life and functioning. *See id*. at 845, 850. I thus do not give significant weight to these visits as opportunities for Petitioner to have reported her pain.

More problematic is the October 19, 2022 record of a visit Petitioner had with her PCP that does not record any complaint of shoulder pain. Ex. 3 at 858. But Petitioner subsequently linked the onset of her shoulder pain to her vaccination - at urgent care, to her orthopedist, and during occupational therapy. *See* Ex 3 at 784 (reported pain "for the last 3 months, since getting her flu shot injection."); 872 (reported acute onset left shoulder pain "following her flu shot in September."); 998 (reported left shoulder pain "which started in September 2022 s/p flu shot."). And there are no records in which Petitioner reports later onset. Thus, the one silent record does not outweigh the remaining records which support a finding of Table onset, even if it reflects an instance in which Petitioner *could* have reported shoulder pain.

In addition, Petitioner has provided affidavit testimony explaining the records and her delay in seeking treatment – and thus supporting Table onset. Petitioner recalled that she felt immediate pain after her vaccination - "like the needle hit a bone" and that the injection site "bubbled up" to the size of a quarter, which took a month to resolve. Ex. 4 at ¶1; Ex. 6 at ¶1. Both Petitioner's daughter and her friend filed affidavits in which they stated that Petitioner called and complained of shoulder pain on the day of vaccination. *See* Ex. 7 at ¶2; Ex. 8 at ¶1. Further, Petitioner stated that she mentioned her shoulder pain to her PCP during the October 19, 2022 appointment and was led to believe that waiting longer might resolve the problem. Ex. 4 at ¶2. These statements also tend to explain Petitioner's delay in seeking treatment until almost three months after her vaccination. While these facts do not defeat entitlement, they are factors that I will consider in determining compensation for Petitioner's pain and suffering.

Although the record does not contain crystal clear statements of onset within 48 hours in medical records, the evidence taken as a whole supports a finding that Petitioner more likely than not experienced pain within forty-eight hours of her vaccination.

### V.    Ruling on Entitlement

#### A.    *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that her pain began within 48 hours after her vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

#### B.    *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a flu vaccine in her left arm on September 21, 2022. Ex. 1 at 1; Section 11(c)(1)(A) (requiring receipt of a covered vaccine). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 4 at ¶8; Section 11(c)(1)(E) (lack of prior civil award). Finally, the medical records indicate that Petitioner treated her shoulder pain consistently through June 12, 2023 – approximately nine months after her vaccination. *See e.g.* Ex. 3 at 784, 872, 986. Thus, severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
